**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| COMPUTER SCIENCES CORPORATION, | § § § | No. _____ |
| Plaintiff, | § § | |
| v. | § § | |
| TATA CONSULTANCY SERVICES LIMITED, TATA AMERICA INTERNATIONAL CORPORATION, DOE DEFENDANTS 1-10, | § § § § § | |
| Defendants. | § | |

## COMPLAINT AND JURY DEMAND

Plaintiff Computer Sciences Corporation ("CSC"), by its undersigned counsel, as and for its Complaint states and alleges as follows:

### I.

### PRELIMINARY STATEMENT

1.      CSC brings this action to stop Defendants, CSC's direct competitors, from improperly accessing and using CSC's confidential, proprietary and trade secret information and source code to develop Defendants' competing software product.  Defendants are unfairly competing with CSC in the U.S. in the life insurance and annuities administration and processing market.  Rather than invest the substantial time and resources to compete legitimately and develop the complex software system required to administer and market U.S. policies, Defendants are accessing and using CSC's software source code and documentation and its confidential, proprietary and trade secret information to do so.

2.      CSC is a leading worldwide provider of business solutions software.  CSC owns the VANTAGE-ONE® / Wealth Management Accelerator™ ("Vantage") and CyberLife®

software platforms, which are two of the most developed and sophisticated software platforms to administer and process annuities and life insurance premiums in the United States.

3.     The Vantage and Cyberlife software systems were created through decades of continuous development and hundreds of millions of dollars of investment by CSC and its predecessors.   The software systems are large and complex.   They are the product of, and embody, CSC's confidential, proprietary and trade secret processes, methods, and know-how. CSC's source code and the processes, methods, and know-how it embodies are confidential, proprietary and constitute trade secrets entitled to full legal protection.

4.     Defendants recently announced their plan to enter the U.S. market for administration and processing annuities and life insurance policies.   However, they have no software platform of their own that is capable of administering and processing such policies. Upon information and belief, Defendants previously estimated that it would take 3-5 years for them to develop such a platform, and recently acknowledged that the development is proceeding slower than expected and will now take 5-7 years to do so.   Upon information and belief, Defendants are experiencing difficulty in the development of their own system and are under pressure to complete development as soon as possible.   Defendants are therefore improperly accessing and using CSC's proprietary software to develop the TCS product and steal CSC's customers.

## II.

## PARTIES AND JURISDICTION

5.     Plaintiff CSC is a Nevada corporation with its principal place of business located in Tysons Corner, Virginia.   CSC is among the world's largest developers and distributors of software products.   CSC provides a variety of services in the Life, Wealth and Insurance market,

including at times licensing its software products to manage and administer all aspects of life insurance policies and annuities.  CSC, as well as its customers and licensees, use these products to administer millions of life insurance policies and annuities daily.

6.     Defendant Tata Consultancy Services Limited ("TCS India") is an Indian corporation and, upon information and belief, TCS India's principal place of business is in Mumbai, India.  Since 2004, TCS has been registered to conduct business in Texas, and maintains an office address at 3010 Lyndon B. Johnson Fwy #400, Dallas, TX 75234.  TCS India's registered agent is CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

7.     Defendant Tata America International Corporation ("TCS America") is a New York corporation that maintains its principal place of business in New York City.  Upon information and belief, TCS America is a wholly-owned subsidiary of TCS, it is registered to conduct business in Texas, and, on information and belief, it maintains an office at 3010 Lyndon B. Johnson Fwy #400, Dallas, TX 75234.  TCS America's registered agent is CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

8.     Both TCS India and TCS America regularly operate under the name "TCS." They use the same logo, and both Defendants maintain the same office address in various cities, including Dallas and New York.  Upon information and belief, TCS India and TCS America offer the same services and products, with TCS America acting as TCS India's North American affiliate.

9.     At all times referenced in this Complaint, TCS India and TCS America were and acted as agents of each other, and with knowledge of and approval of each other's intent and actions.  At all relevant times, TCS India and TCS America acted with a unity of interest that

eliminated any division or separation between them as both a practical matter and a legal matter.

10.     Doe Defendants 1-10 are, upon information and belief, individuals employed by Tata Consultancy Services Limited and Tata America International Corporation who are acting in concert and participating with each other and with Tata Consultancy Services Limited and Tata America International Corporation in committing the wrongful acts alleged herein and are legally responsible for the acts, events, happenings, and occurrences described in this complaint, and proximately caused injuries and damages to CSC.  Doe Defendants 1-10 are sued herein under fictitious names because their true names and capacities are unknown at this time. The complaint will be amended when their true names and capacities are ascertained.

11.     This Court has subject matter jurisdiction over all Defendants pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367 and 18 U.S.C. § 1030.  In addition, the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because this dispute arises between citizens of different states, one Defendant (TCS India) is a citizen of a foreign state, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

12.     TCS India and TCS America are subject to personal jurisdiction in Texas.  Both Defendants are registered in and authorized to conduct business in Texas, and have registered agents located in Texas.  Defendants are engaged in significant business activities within Texas, and regularly and continually engage in and perform business operations in Texas.  Texas is a "key business hub" for TCS, which has more than 3,500 employees statewide. https://www.tcs.com/tcs-expands-operations-texas-welcoming-200-new-employees-to-plano.   In April 2018, TCS expanded its Texas operations, then in Dallas and Houston, to include Plano by employing more than 200 former TransAmerica employees there.  TCS' Plano location occupies several floors of the TransAmerica building.  Defendants provide software, consultancy services

and other products for use in Texas.  TCS runs information technology education programs in San Antonio, Dallas, Houston, and Austin.   TCS also has a partnership with the Dallas Independent School District to train middle school teachers to learn and apply "computational thinking"      in      the      classroom.      https://www.ignitemyfutureinschool.org/ sites/ignitemyfutureinschool.org/files/Launch%20PDFs/Ignite%20My%20Future%20In%20Sch ool%20Press%20Release.pdf   At all relevant times, both Defendants were and continue to be engaged in solicitation and service activities in Texas, and provide software, services and other products to customers in Texas to be used and consumed in Texas.  Upon information and belief, TCS employees with access to CSC's source code are located in Texas.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400 because Defendants and their agents may be found in this judicial district, both Defendants are subject to personal jurisdiction in this judicial district and a substantial portion of the events giving rise to this action occurred within this district.  Significant portions of the intellectual property and confidential and proprietary information that are the subject of the allegations set forth in this Complaint were created in, developed in and/or are situated in this judicial district.  Upon information and belief, TCS employees located in this district have improperly accessed and used CSC's confidential, proprietary and trade secret information.

### III.

### FACTS APPLICABLE TO ALL CLAIMS

**A.**    **CSC and its Business**

14.     CSC is among the world's leading independent end-to-end IT services company. Its corporate parent is DXC Technology Corporation ("DXC").  DXC was formed on April 1, 2017, by the merger of CSC and the enterprise services business of Hewlett Packard Enterprise,

which for decades were global leaders in developing IT solutions.  DXC is a Fortune 500 company and its shares are traded on the New York Stock Exchange.

15.     CSC and its affiliates employ over 130,000 people and maintain offices around the world, including office locations across Europe, Australia, and Singapore.  Its customers represent a broad swath of industries, including insurance, healthcare and life sciences, banking and capital markets, aerospace and defense, travel and transportation, hospitality, energy, utilities, technology, media and communications.

16.     One of CSC's business lines is its Life, Wealth and Insurance business.  In the United States, CSC owns sophisticated business software platforms used to administer and process life insurance and annuity policies.  In addition to Vantage and CyberLife, CSC's software suite includes several other software systems, including Wealth Management Accelerator™ (the successor to VANTAGE-ONE®), PerformancePlus®, Distribution Support System®, FutureFirst, nbA®, VPMS®, Policy Link and ALS (collectively, "Additional CSC Products").  The backbone of CSC's software product suite offerings for life insurance and annuities is the Vantage and CyberLife systems.

17.     The Vantage and CyberLife systems have been developed over the course of several decades at great expense.  They are each large, sophisticated, complex computer systems capable of performing complex calculations, processing, management and administration functions required to manage large portfolios of life insurance and annuity policies.  Over the course of several decades, CSC has integrated U.S. tax law, state tax law and regulations into the source code that operates its CyberLife and Vantage platforms.  As a result, CSC's CyberLife and Vantage platforms administer life insurance policies and annuities quickly and in compliance with all applicable tax codes and regulations.  This maximizes the value of life insurance policies

and annuities for policyholders and annuitants serviced by CSC's CyberLife and Vantage platforms.

18.     The complexity of the systems are compounded by the fact that the policies handled by Vantage and CyberLife are often tax-exempt or tax-advantaged under the U.S. tax code and regulations and under state tax law.  These laws and regulations are almost constantly in flux.  Therefore, the Vantage and CyberLife systems need to discern, incorporate and employ a multitude of regulations required at the federal level and by each of the 50 states.  The Vantage and CyberLife systems are extremely robust and can handle nearly all types of policies.  Vantage and CyberLife are also time-tested, having developed their reliability and accuracy over years of development and refinement, and they are very flexible, which makes them desirable to customers.

19.     CSC rigorously protects the confidentiality of its software, source code, software documentation and related proprietary information for its Vantage and CyberLife platforms.  The source code and software documentation contain and embody confidential, proprietary and valuable trade secret information that is owned by CSC and is the product of years of development efforts, creativity, and innovation.   This includes the methods, formulas, techniques, data, processes, and know-how used by CSC to achieve the functionalities found in CSC's software, such as calculations, rates of return, fund and policy valuations, and other complex data processing.

**B.     CSC Licenses Vantage and CyberLife to Money Services, Inc. ("MSI")**

20.     CSC licenses its software to customers under license agreements which provide for stringent restrictions on access to and use of the software by its customers, and strict confidentiality and non-disclosure obligations.  One of the customers to whom CSC has licensed Vantage, CyberLife and Additional CSC Products is Money Services, Inc.  CSC has licensed its

software to MSI since at least 1994.  MSI is now owned by TransAmerica, a large company that provides life insurance and annuity products (as well as other financial investment products), through its subsidiaries such as MSI.  MSI uses CSC's software systems to administer and process over ten million life insurance and annuity policies.

21.     Pursuant to the license agreements with MSI, CSC has provided MSI with copies of Vantage, CyberLife and Additional CSC Products software, including source code, to be hosted on MSI's own servers, subject to the strict limited access, use, confidentiality and non-disclosure provisions of the license agreements.  At all times, the CSC software that runs on MSI's servers remains subject to the same confidentiality and trade secret protections set forth in the license agreements.

22.     Pursuant to the license agreements, MSI was permitted to use the software to process and administer policies and agreed that such use would only be for MSI's benefit.  MSI was also permitted to have limited access to the source code to maintain the systems residing on MSI servers and also, with CSC's assistance, to customize certain aspects of the software.

23.     In 2014, MSI began using TCS to provide support to maintain its IT systems. This included maintenance of some of CSC's software systems that resided on MSI's servers. Pursuant to the license agreements between CSC and MSI, any such access was to be limited and subject to access, use, confidentiality and non-disclosure terms at least as strict as set forth in the license agreements and also to include additional terms set forth in a 2014 Addendum to the license agreements.  This required TCS to agree (a) to use its access to such software "solely for the benefit of [MSI];" and (b) to accept confidentiality obligations at least as stringent as those which CSC's License Agreements imposed upon MSI to preserve the confidentiality and the proprietary nature of Vantage, CyberLife, the Additional CSC Products and any related software

documentation and other proprietary information of CSC.   At this time, TCS was not a competitor in the U.S. Life, Wealth and Insurance market.

**C.**     **In 2018, TCS Enters The U.S. Life, Wealth and Insurance Market**

24.     In January 2018, TCS announced its entry into the U.S. Life, Wealth and Insurance Market by issuing a press release about its new partnership with TransAmerica, MSI's parent company.   https://www.tcs.com/transamerica-awards-tcs-multi-year-contract-third-party-administration.  The press release stated that TCS' agreement with TransAmerica was a 10-year agreement worth over $2 billion in revenue to TCS.   The press release disclosed that the agreement was for TCS Third Party Administration ("TPA") services, *i.e.¸* policy processing and administration services, and touted TCS' BaNCS software system as TCS' software program for providing these services.  Specifically, the press release states:

> TCS BaNCS has become a highly respected and successful digital platform in the European market for more than a decade, with more than 17 million policies under administration.  . . . TCS has adapted the platform for the U.S. market to meet its operational and regulatory needs, both for today and in the future.

25.     However, upon information and belief, TCS does not have a software product capable of administering and processing life insurance and annuity policies in the United States. Upon information and belief, TCS is currently developing a software system for U.S. life insurance and annuity administration and processing, which TCS initially estimated would take 3-5 years to complete.   Upon information and belief, TCS has experienced difficulties in developing its BaNCS software platform for the United States and now estimates that it will take 5-7 years to complete development.

**D.**     **TCS Has and Is Improperly Accessing and Using CSC's Confidential and Proprietary Source Code, Software Documentation and Other Proprietary Information to Develop BaNCS for the U.S.**

26.     After TCS' announcement of its agreement with TransAmerica in 2018, upon

information and belief, TCS hired 2,200 TransAmerica (or MSI) employees.[1]  Upon information and belief, most of the former TransAmerica / MSI employees who are now employed by TCS had been administering and processing policies at TransAmerica / MSI using CSC software systems.  In addition, some of the TransAmerica / MSI employees who are now employed by TCS are individuals who had access, subject to the terms of the license agreements, to CSC's source code residing on MSI's servers when they were MSI employees.  After they became TCS employees, they still have access to the CSC source code on MSI's servers, as well as to the software documentation and other confidential and proprietary CSC information.  Upon information and belief, these TCS employees with access to CSC's source code now work in TCS' facilities, including in Texas, as they are no longer TransAmerica (or MSI) employees.

27.     After TCS completed this *en masse* hiring, TCS issued a press release on April 18, 2018 and announced to the world that "TCS will now administer TransAmerica's life insurance, annuity, supplemental health insurance, and workplace voluntary benefits products, and manage the administration of more than 10 million policies."  TCS' press release failed to mention that TCS' intent was to conduct *all* of that work on CSC's Vantage and CyberLife platforms.

28.     TCS now employs not only thousands of people who know how to use CSC software, including Vantage and CyberLife, but TCS also now employs former MSI employees with knowledge of and access to the CSC source code hosted on the MSI servers.  TCS is using this access to and knowledge of the CSC source code, software documentation, and other proprietary and confidential CSC information to develop TCS' BaNCS for the U.S.

29.     At the end of March 2019, CSC learned that TCS employees assigned to

---

[1] https://www.tcs.com/transamerica-awards-tcs-multi-year-contract-third-party-administration

developing its BaNCS platform encountered difficulties devising a software solution for calculating a rate of return (an actuarial concept commonly known as "ROR").  In e-mails, TCS employees admitted that TCS' BaNCS software was not able to "capture" a particular ROR value.  A TCS employee, who upon information and belief is part of the U.S. BaNCS development team, wrote in an email:  "Quite honestly, I'm not sure how VTG [Vantage] does this today, so maybe we should engage [TCS employees with access to the Vantage source code] if we want to emulate that?"

30.     Over the course of three weeks, TCS employees then accessed and analyzed both the proprietary CSC software documentation and the Vantage source code to try to determine the method and process by which Vantage calculates this particular rate of return.

31.     One TCS employee wrote in an email:  "Here is some text from the old Vantage manuals on the rate of return screen for reference if it answers any questions."  He then pasted nearly two pages from a Vantage manual describing how CSC determined "Calculated Investment Return on Annuities."  He also said:  "I will try to look into the code further."

32.     This same TCS employee also looked at the "transactions of interest" that are accessed by the Vantage source code in performing the calculation and sent it to other TCS employees in an e-mail.

33.     Another TCS employee circulated additional CSC proprietary information regarding the way that Vantage performs this calculation.

34.     Later, this same TCS employee *copied and pasted the actual Vantage source code pertaining to this calculation, and resulting Vantage calculations, into an email and sent it to his TCS colleagues*.

35.     As stated in an e-mail, the goal of accessing and analyzing CSC's proprietary

documentation and source code was to *"determine what the calc is/should be doing to provide to the BaNCS team."*

36.     This is one example of how TCS is improperly accessing and using CSC's confidential, proprietary and trade secret information, including CSC source code, to develop TCS' U.S. BaNCS software platform and unfairly compete with CSC.

37.     TCS' copying of CSC's "ROR" source code for Vantage is the proverbial tip of the iceberg.  Upon information and belief, TCS is engaged in an ongoing and wide-ranging effort to misuse its access to CSC's confidential and proprietary information, including CSC's source code, to develop its new BaNCS platform for the United States.

38.     Unless TCS is stopped from proceeding with these unjust efforts, TCS will be able to develop and launch a life insurance and annuities platform that is based on business and software solutions brazenly stolen from CSC.

39.     Misappropriating sophisticated business software is, apparently, TCS' method of entering new business markets in the United States.   In 2014, Epic Systems Corporation ("Epic"), a software provider in the hospital and healthcare industries, commenced an action against TCS India and TCS America in the United States District Court for the Western District of Wisconsin, alleging that the TCS entities accessed Epic's web portal without authorization while servicing a mutual client – and then used the misappropriated information to develop a competing software platform.[2]   In October 2017, following a jury trial, the court entered a judgment in Epic's favor:  (a) awarding Epic $420 million in damages against TCS India and TCS America; (b) granting a permanent injunction from using any of Epic's trade secrets or

---

[2] *Epic Systems Corp. v. Tata Consultancy Services Limited and Tata America International Corporation d/b/a TCA America*, Case No. 3:14-cv-00748-wmc (W.D. Wisc.).

confidential information for any reason, including but not limited to the design, development and marketing of any TCS software in the areas of electronic health records, electronic medical records and hospital management systems, or possessing or retaining any Epic trade secrets or confidential information in any form; and (c) for a period of 2 years, enjoining TCS India and TCS America from resisting, hampering or otherwise interfering with the activities of a court-appointed monitor to ensure that TCS' development and implementation of certain products does not improperly use any of Epic's trade secrets or confidential information.[3]

40.     Having learned nothing from the outcome of the *Epic* litigation or the massive judgment entered against it, TCS continues to improperly access, copy and make improper use of CSC's source code, trade secrets and proprietary information.  In the absence of injunctive relief and other relief sought herein, TCS will pursue its true objective, which is to misappropriate the software, the knowledge, and the means to compete unlawfully with CSC.

## IV.

## CLAIMS

### Count 1
### Trade Secret Misappropriation under the Defend Trade Secrets Act

41.     CSC repeats and incorporates the allegations set forth in Paragraphs 1-40 above.

42.     At all relevant times, CSC has been, and remains, the owner of trade secrets that constitute protectable programs (including software and source code), processes, methods, techniques, formulas, data, and know-how, such as calculations, rates of return, fund and policy valuations, and other complex data processing, and compilations in the field of administering, processing and managing life insurance policies and annuities including, but not limited to, those

---

[3] *Id.*, Judgment in a Civil Case, dated October 3, 2017, Docket No. 978.

used by CSC to achieve the functionalities found in Vantage, CyberLife, and Additional CSC Products. These trade secrets are used in interstate commerce.

43. At all relevant times, CSC has undertaken, and continues to undertake, significant measures, all of which are reasonable under the circumstances, to preserve the secrecy and prevent the disclosure of its trade secrets and its confidential and proprietary information.

44. CSC makes significant and reasonable efforts to maintain the secrecy of its trade secrets, including through contractual provisions, technological means, and physical restrictions. CSC derives significant and independent economic value from maintaining the confidentiality of its trade secrets and preventing their disclosure or distribution to the public or to other persons or entities who can obtain economic value from their disclosure or use.

45. As alleged above, in violation of CSC's rights, Defendants willfully and maliciously misappropriated and threaten to continue to misappropriate CSC's source code and other proprietary and confidential information by acquiring it through improper and wrongful means and by improperly using such trade secrets. As alleged above, Defendants intentionally and improperly accessed and threaten to continue to improperly access CSC trade secret information. Defendants also misappropriated and threaten to continue to misappropriate CSC's trade secrets by using them knowing that they were improperly acquired and using them for improper purposes – to develop TCS' competing product, U.S. BaNCS.

46. Defendants' misappropriation of CSC's trade secrets is for their own economic benefit, as using CSC's trade secret information will allow TCS to (1) develop U.S. BaNCS into a competitive product that emulates CSC's successful and time-proven products; (2) reduce the investment of time and resources that Defendants would ordinarily be required to make in order to develop their BaNCS platform independently and legitimately; and (3) short-cut the otherwise

years-long development process to bring a product to market quickly that will directly compete with CSC.

47.     CSC's trade secrets are in danger of further misappropriation as long as Defendants continue to access and use CSC's trade secrets to assist in the development of U.S. BaNCS.

48.     Defendants' wrongful actions have caused and will continue to cause irreparable harm to CSC.  In addition, Defendants' misappropriation has caused CSC damage, and resulted in Defendants' unjust enrichment.

49.     Defendants' wrongful conduct was intentional, malicious and specifically directed at causing harm to Plaintiff.  Consequently, Plaintiff is entitled to an award of exemplary damages.

<u>**Count 2**</u>
**Unfair Competition**

50.     CSC repeats and incorporates the allegations in Paragraphs 1-49 above.

51.     As alleged herein, CSC has invested decades of time and money to develop its software systems and the confidential and proprietary information used in connection with the software systems.

52.     Defendants have improperly used CSC's confidential and proprietary information in the development of a product, U.S. BaNCS, that is intended to directly compete with CSC's existing products.

53.     Defendants' wrongful actions constitute unfair competition because Defendants are improperly using CSC's substantial investment over the course of decades to research, develop, and refine its complex Vantage and CyberLife software systems, and Additional CSC Products.

54.     As a result of Defendants' unlawful, unfair and wrongful conduct, CSC has sustained substantial damage in an amount to be established at trial.  Because Defendants' actions were intentional and malicious, CSC is also entitled to an award of exemplary damages.

**Count 3**
**Conspiracy**

55.     CSC repeats and incorporates the allegations in Paragraphs 1-54 above.

56.     Defendants knowingly entered into a conspiracy to misappropriate CSC's trade secrets and confidential and proprietary information, and to compete unfairly with CSC.

57.     Upon information and belief, this conspiracy was undertaken and carried out with the purpose of misappropriating CSC's source code and software, reducing or eliminating the otherwise enormous investment of time, money and resources that Defendants would otherwise be required to undertake in order to develop BaNCS as a competent platform in the United States to administer life insurance policies and annuities in conformity with U.S. tax law and regulations, and to compete unfairly with CSC and cause damage to CSC.

58.     In furtherance of a conspiracy, Defendants have each committed unlawful, overt acts, with the specific intent to harm CSC, as described in this Complaint.

59.     As a direct and proximate result of the conspiracy, CSC's software, source code, trade secrets and other proprietary and confidential information have been misappropriated, and are in danger of further misappropriation.

**Count 4**
**Tortious Interference with Prospective Economic Advantage**

60.     CSC repeats and incorporates the allegations in Paragraphs 1-59 above.

61.     As described above, Defendants have tortiously interfered with CSC's prospective economic advantage.  CSC has invested hundreds of millions of dollars into its software systems, including Vantage, CyberLife and Additional CSC Products.  CSC's robust software systems are

the foundation for CSC's services offered to the Life, Wealth and Insurance industry. Defendants' wrongful conduct alleged herein, including Defendants' illicit development of a software system to steal business from CSC tortiously interferes with CSC's prospective economic advantage in this industry.

62.     Defendants' wrongful conduct has and is causing CSC to suffer irreparable damage, and CSC will continue to suffer irreparable damage unless Defendants are enjoined.

63.     Additionally, as a direct and proximate result of Defendants' tortious interference, CSC has been damaged in an amount to be proven at trial.  CSC is also entitled to recover exemplary damages because Defendants' wrongful conduct was intentional, knowing and malicious.

## Count 5
## Conversion

64.     CSC repeats and incorporates the allegations in Paragraphs 1-63 above.

65.     CSC is the lawful owner of Vantage, CyberLife and Additional CSC Products.

66.     Defendants have no right, title or interest to use Vantage, CyberLife or Additional CSC Products to develop TCS' competing software, U.S. BaNCS.

67.     Defendants' taking of Vantage, and upon information and belief, CyberLife and Additional CSC Products, or any portion thereof, constitutes an unlawful, ongoing conversion of CSC's property.

68.     As a result of Defendants' ongoing conversion, CSC has suffered actual and economic damages in an amount to be proven at trial.  Because Defendants' ongoing conversion was done knowingly, intentionally and maliciously, CSC is also entitled to recover exemplary damages.

69.     Further, because Defendants' conversion of CSC's property is being done to

improperly develop TCS' U.S. BaNCS, a product intended to directly compete with CSC's software systems, CSC has and will continue to suffer irreparable injury unless and until Defendants are enjoined.

## V.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CSC prays for the following relief and judgment in its favor as follows:

A.   An order granting CSC expedited discovery in this matter;

B.   A preliminary and permanent injunction:

(1)  enjoining Defendants, their respective affiliates, employees, agents, and

all those acting in concert or participation with them, from:

(a) acquiring, disclosing, or using CSC's software, source code, software documentation, or any part thereof, and CSC's confidential and proprietary processes, methods, techniques, and compilations (collectively, "CSC Information") in connection with the development or use of Defendants' own products (including BaNCS);

(b) acquiring, disclosing, or using CSC Information except as authorized by CSC and necessary to provide TCS' contractually-obligated services to MSI;

(c) to the extent that Defendants assert that acquiring, using, or disclosing CSC Information is authorized and necessary to provide TCS' contractually-obligated services to MSI, Defendants shall identify to CSC:  (1) the specific CSC Information that has been or will be acquired, disclosed, or used; (2) the specific contractually-obligated service that necessitates such acquisition, disclosure or use; (3) the reason such acquisition, disclosure, or use is necessary; (4) the name(s) of the MSI employee(s) and business unit who authorized the work; and (5) the name(s) of Defendants' employee(s) who need to acquire, disclose or use the CSC information, and for how long, within three days of this order;

(d)  prohibiting the sale, offering for sale or marketing of any products that were developed using or that embody or incorporate

any of CSC's software, code, processes, documents or confidential and proprietary information;

(2) preventing Defendants, their respective affiliates, employees, agents, and all those acting in concert or participation with them, from further improper access or use of CSC source code, software, or documentation, or any portion thereof, or any other CSC confidential and proprietary information, including by imposing a monitor at Defendants' cost;

C.   Awarding CSC compensatory damages against Defendants, jointly and severally, in an amount to be proven at trial, together with pre- and post-judgment interest on all damages;

D.   Awarding CSC exemplary damages;

E.   Awarding CSC its reasonable attorneys' fees and costs;

F.   Disgorgement of Defendants' unjust enrichment and ill-gotten gains;

G.   Such other and further relief as the Court may deem just and proper.

## VI.

### DEMAND FOR JURY

Plaintiff requests trial by jury with respect to all claims so triable.

Dated:  April 22, 2019                              Respectfully submitted,


By: *Justin Sumner*
**SUMNER SCHICK LLP**
Justin V. Sumner
Texas Bar No. 24063022
Steve Sumner
Texas Bar No. 19508500
3811 Turtle Creek Blvd., Suite 600
Dallas, Texas 75225
jsumner@sumnerschick.com
ssumner@sumnerschick.com
(214) 965-9229

**CROWELL & MORING LLP**
Thomas Gies, Esq.
District of Columbia Bar # 943340
Mark A. Klapow, Esq. (*pro hac vice* to be filed)
District of Columbia Bar # 474646
Julia R. Milewski, Esq. (*pro hac vice* to be filed)
District of Columbia Bar # 1008678
1001 Pennsylvania Avenue, NW
Washington, DC  20004
TGies@crowell.com
MKlapow@crowell.com
JMilewski@crowell.com
(202) 624-2500

**CROWELL & MORING LLP**
Valerie M. Goo, Esq. (*pro hac vice* to be filed)
California Bar #187334
515 South Flower Street, 40th Floor
Los Angeles, California 90071
VGoo@crowell.com
(213) 622-4750

*Attorneys for Plaintiff*
*Computer Sciences Corporation*

JS 44 (Rev. 06/17) - TXND (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
COMPUTER SCIENCES CORPORATION

**DEFENDANTS**
TATA CONSULTANCY SERVICES LIMITED and TATA AMERICA INTERNATIONAL CORPORATION

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Sumner Schick LLP - Justin Sumner; 3811 Turtle Creek Blvd., Suite 600, Dallas, Texas 75219.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1  U.S. Government Plaintiff
- ✖ 3  Federal Question *(U.S. Government Not a Party)*
- ❏ 2  U.S. Government Defendant
- ❏ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane  ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product   Product Liability | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | Liability  ❏ 367 Health Care/ | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel &   Pharmaceutical | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| & Enforcement of Judgment | Slander   Personal Injury | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers'   Product Liability | | ❏ 835 Patent - Abbreviated | ❏ 460 Deportation |
| ❏ 152 Recovery of Defaulted | Liability  ❏ 368 Asbestos Personal | | New Drug Application | ❏ 470 Racketeer Influenced and |
| Student Loans | ❏ 340 Marine   Injury Product | | ❏ 840 Trademark | Corrupt Organizations |
| (Excludes Veterans) | ❏ 345 Marine Product   Liability | | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 153 Recovery of Overpayment | Liability  **PERSONAL PROPERTY** | **LABOR** | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| of Veteran's Benefits | ❏ 350 Motor Vehicle  ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle  ❏ 371 Truth in Lending | Act | ❏ 863 DIWC/DIWW (405(g)) | Exchange |
| ❏ 190 Other Contract | Product Liability  ❏ 380 Other Personal | ❏ 720 Labor/Management | ❏ 864 SSID Title XVI | ✖ 890 Other Statutory Actions |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal   Property Damage | Relations | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| ❏ 196 Franchise | Injury  ❏ 385 Property Damage | ❏ 740 Railway Labor Act | | ❏ 893 Environmental Matters |
| | ❏ 362 Personal Injury -   Product Liability | ❏ 751 Family and Medical | | ❏ 895 Freedom of Information |
| | Medical Malpractice | Leave Act | **FEDERAL TAX SUITS** | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | ❏ 870 Taxes (U.S. Plaintiff | ❏ 896 Arbitration |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights   **Habeas Corpus:** | ❏ 791 Employee Retirement | or Defendant) | ❏ 899 Administrative Procedure |
| ❏ 220 Foreclosure | ❏ 441 Voting  ❏ 463 Alien Detainee | Income Security Act | ❏ 871 IRS—Third Party | Act/Review or Appeal of |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment  ❏ 510 Motions to Vacate | | 26 USC 7609 | Agency Decision |
| ❏ 240 Torts to Land | ❏ 443 Housing/   Sentence | | | ❏ 950 Constitutionality of |
| ❏ 245 Tort Product Liability | Accommodations  ❏ 530 General | **IMMIGRATION** | | State Statutes |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities -  ❏ 535 Death Penalty | ❏ 462 Naturalization Application | | |
| | Employment   **Other:** | ❏ 465 Other Immigration | | |
| | ❏ 446 Amer. w/Disabilities -  ❏ 540 Mandamus & Other | Actions | | |
| | Other  ❏ 550 Civil Rights | | | |
| | ❏ 448 Education  ❏ 555 Prison Condition | | | |
| | ❏ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ✖ 1  Original Proceeding
- ❏ 2  Removed from State Court
- ❏ 3  Remanded from Appellate Court
- ❏ 4  Reinstated or Reopened
- ❏ 5  Transferred from Another District *(specify)*
- ❏ 6  Multidistrict Litigation - Transfer
- ❏ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Defend Trade Secrets Act - 18 U.S.C. § 1836
Brief description of cause:
Misappropriation of trade secrets

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
In excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ✖ Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
04/22/19

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____