IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COMPUTER SCIENCES CORPORATION, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:19-cv-970-L** |
| TATA CONSULTANCY SERVICES LIMITED, TATA AMERICA INTERNATIONAL CORPORATION, and DOE DEFENDANTS 1-10, | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Plaintiff's Application for Temporary Restraining Order, Expedited Discovery, and Order to Show Cause for Preliminary Injunction (Doc. 6), filed April 22, 2019; Defendants' Opposition to Plaintiff's Application (Doc. 22), filed April 29, 2019; and Plaintiff's Reply (Doc. 26), filed May 1, 2019. After considering the application, supporting evidence, and applicable authority, the court **denies** Plaintiff's Application for Temporary Restraining Order and **orders** the parties to submit a proposed discovery and briefing schedule and suggested date for the preliminary injunction hearing.

### I. Factual and Procedural Background

Plaintiff Computer Sciences Corporation ("Plaintiff" or "CSC") is a provider of life insurance and annuities software systems and services. Pl.'s Appl., Doc. 7 at 7. CSC developed a proprietary software system, VANTAGE-ONE / Wealth Management Accelerator ("Vantage"), that performs calculations such as policy and fund valuations, rates of return, and cost of insurance

calculations. Pl.'s Appl., Doc. 7 at 7-8. CSC contends that its software source code and associated user manuals, contain trade secrets and are marked as confidential and proprietary. *Id*.

CSC licenses the Vantage software to customers pursuant to confidentiality and nondisclosure agreements that impose "strict limitations" on the use of the software. *Id*. The customer must limit who is able to access the source code, and CSC employees directly manage and support the customer's access to the software. Pl's Appl., Doc. 7 at 9.

One of CSC's customers with access to Vantage source code is Money Services, Inc. ("MSI"). *Id*. MSI is a subsidiary of Transamerica. *Id*. Under the license agreement between MSI/Transamerica and CSC, MSI is authorized to share access to Vantage with third parties, provided that the third party is bound by confidentiality and nondisclosure provisions and does not use the software to benefit itself. Pl.'s Appl., Doc. 7 at 10. MSI/Transamerica provides such third-party access to one of its service providers, the defendants in this case, Tata Consultancy Services Limited, Tata America International Corporation, and Doe Defendants 1-10 (collectively, "Defendants" or "TCS"). Pl.'s Appl., Doc. 7 at 11.

In January 2018, TCS announced that it reached a deal with Transamerica to adapt its software platform, BaNCS, to perform life insurance and annuities administration for TransAmerica. Pl.'s Appl., Doc. 7 at 6; Defs.' Resp., Doc. 22 at 8. Although Transamerica currently uses CSC's Vantage software to perform its operations, the deal with TCS anticipates the eventual transition of Transamerica from the Vantage software to TCS's BaNCS software. Def.'s Resp., Doc. 22 at 8. As a result of the deal, TCS now employs former MSI/Transamerica employees, some of whom have access to CSC's Vantage software pursuant to the license arrangement between CSC and MSI/Transamerica. Pl.'s Appl., Doc. 7 at 11.

On March 25, 2019, Ashish Barnwal ("Barnwal"), a CSC employee who maintains an office at the MSI/Transamerica facility to oversee the use of Vantage software, was copied on an

e-mail thread, the contents of which give rise to this lawsuit and a copy of which is attached as "Exhibit A" to Barnwal's Declaration. Pl.'s Appl., Doc. 7 at 13. The e-mails include a discussion among TCS and MSI/Transamerica employees regarding how the Vantage software program performs rate of return calculations. Pl.'s Appl., Doc. 7 at 11-13. CSC contends that these e-mails are evidence that TCS is misappropriating its trade secrets, namely, the Vantage source code and its accompanying user manual describing the calculation. Pl.'s Appl., Doc. 7 at 12-13. CSC alleges that TCS is misappropriating the Vantage source code and user manual to develop its competing BaNCS software system, pursuant to its deal with TransAmerica. Pl.'s Appl., Doc. 7 at 10, 17.

Upon discovering the existence of these e-mails from its employee Barnwal, CSC filed this action on April 22, 2019, alleging claims against Defendants for trade secret misappropriation under the Defend Trade Secrets Act ("DTSA") and Texas Uniform Trade Secrets Act ("TUTSA"), unfair competition, conspiracy, tortious interference with prospective economic advantage, and conversion. By separate application, CSC filed the Motion for Temporary Restraining Order, Expedited Discovery, and Order to Show Cause for Preliminary Injunction. Specifically, CSC requests that the court issue a temporary restraining order that enjoins Defendants from:

    i.    Acquisition, disclosure, or use of CSC's software, source code, software documentation, or any part thereof, and CSC's confidential and proprietary processes, methods, techniques, and compilations (collectively, "CSC Information") in connection with the development or use of Defendants' own products (including BaNCS);

    ii.    Acquisition, disclosure, or use of CSC Information except as authorized by CSC and necessary to provide TCS' contractually-obligated services to MSI;

    iii.    To the extent that Defendants assert that acquisition, use or disclosure of CSC Information is authorized and necessary to provide TCS' contractually-obligated services to MSI, Defendants shall identify to CSC: (1) the specific CSC Information that has been or will be acquired, disclosed, or used; (2) the specific contractually-obligated service that necessitates such acquisition, disclosure or

> use; (3) the reason such acquisition, disclosure, or use is necessary; (4) the name(s) of the MSI employee(s) and business unit who authorized the work; and (5) the name(s) of Defendants' employee(s) who need to acquire, disclose or use the CSC information, and for how long, **within three days of this order**.

Pl.'s Appl., Doc. 7 at 14 (emphasis added).

## II. Legal Standard

The purpose of a temporary restraining order is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). Any temporary restraining order, therefore, is a temporary measure to protect rights until a hearing can be held. *Federal Home Loan Morg. Corp. v. American Home Mortg. Corp.*, 2007 WL 2228619, at *2 (N.D. Tex. 2007).

There are four prerequisites for the extraordinary relief of a temporary restraining or preliminary injunction. A court may grant such relief only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction.

**III. Analysis**

CSC argues that it is likely to succeed on the merits of its claims for trade secrets misappropriation, unfair competition, and tortious interference with prospective business relationships. The court determines that, at this stage, CSC has failed to demonstrate that there is a substantial likelihood that it will succeed on the merits of each of its claims and, accordingly, the court need not reach the remaining three elements.

**A. Trade Secret Misappropriation**

To state a claim under the DTSA, a plaintiff must allege: (1) a trade secret; (2) misappropriation; and (3) use in interstate commerce. 18 U.S.C. § 1836; *Blue Star Press, LLC v. Blasko*, No. SA-17-CA-111-OLG (HJB), 2018 WL 1904835, at *2 (W.D. Tex. Mar. 6, 2018). Similarly, to establish trade secret misappropriation under Texas law, a plaintiff must show: (1) a trade secret; (2) Defendants acquired the trade secret by breach of a confidential relationship or other improper means; and (3) Defendants used the trade secret without authorization. *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 449 (5th Cir. 2007) (citations omitted).

Under both the DTSA and TUTSA, misappropriation includes (1) "disclosure or use of a trade secret of another without express or implied consent by a person who ... used improper means to acquire knowledge of the trade secret" and (2) "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Tex. Civ. Prac. & Rem. Code § 134A.002(3); 18 U.S.C. § 1839(5). "Improper means" include the "breach or inducement of a breach of a duty to maintain secrecy." Tex. Civ. Prac. & Rem. Code § 134A.002(2); 18 U.S.C. § 1839(6)(A).

As a preliminary matter, the court is satisfied that the proprietary information at issue—the Vantage source code and user manual—is entitled to trade secret protection. Under both the DTSA and TUTSA, a trade secret is defined as information, including programs or codes, that the owner

has taken reasonable measures to keep secret and which derives independent economic value from not being generally known or readily ascertainable through proper means. *See TFC Partners, Inc. v. Stratton Amenities, LLC*, 2010 WL 369152, at *2 (W.D. Tex. Jan. 30, 2019); 18 U.S.C. § 1839(3); Tex. Civ. Prac. & Rem. Code § 134A.002(6). At the temporary restraining order stage, a court does not determine that the information at issue is a trade secret; rather, it determines "whether the applicant has established that the information is entitled to trade-secret protection until the trial on the merits." *First Command Financial Planning, Inc. v. Velez*, 2017 WL 2999405, at *8 (N.D. Tex. May 8, 2017). To establish entitlement to trade secret protection, the owner must take "reasonable measures under the circumstances to keep the information secret" and the information must derive economic value from not being generally known or readily ascertainable through proper means. 18 U.S.C. § 1839(3); Tex. Civ. Prac. & Rem. Code § 134A.002(6).

At this stage, CSC has adequately alleged that the Vantage software system and accompanying user manual is entitled to trade secret protection and that CSC took reasonable measures under the circumstances to keep Vantage secret by "using technological and physical security systems, limiting access and use of CSC software, source code, and documentation, marking the source code and documentation as confidential and proprietary, and imposing strict confidentiality, non-disclosure and non-use requirements on those with access to the software, source code and documentation." Pl.'s Appl., Doc. 7 at 17.

The court determines, however, that CSC has not adequately shown a substantial likelihood that it will succeed on the merits of this claim with respect to whether TCS misappropriated the trade secrets. As previously discussed, a trade secret is misappropriated when it is acquired through "improper means," which includes a "breach or inducement of a breach of a duty to maintain secrecy." Tex. Civ. Prac. & Rem. Code § 134A.002(2); 18 U.S.C. § 1839(6)(A). CSC acknowledges that TCS has access to the Vantage software because MSI, pursuant to its license

**Memorandum Opinion and Order – Page 6**

agreement with CSC, has given TCS access as an MSI/TransAmerica service provider. Pl.'s Appl., Doc. 7 at 11. CSC fails to set forth sufficient evidence that TCS breached its duty pursuant to its obligations under the license agreement between CSC and MSI/Transamerica. CSC alleges that the e-mails show that TCS improperly disclosed the Vantage source code to the BaNCS software development team so that BaNCS can "emulate" what Vantage does today. Pl.'s Appl., Doc. 7 at 18. As evidence of its contention, CSC refers to an e-mail sent on March 25, 2019, by Charlie Plathe ("Plathe") (a Transamerica employee) to several TransAmerica and TCS employees, in which he writes that he "was hoping for an intuitive approach to communicate to the BaNCS team." Pl.'s App., Doc. 9-2 at 17. The e-mail is a response to another e-mail in the thread in which a TCS employee copies Vantage source code relating to rate of return calculations. *Id*. at 18. CSC alleges that this e-mail shows that Defendants are disclosing Vantage source code to the BaNCS team for the development of the competing software program. CSC does not, however, set forth evidence that the contents of the e-mails were actually shared with BaNCS developers—who Defendants contend are located in India and who were not privy to the e-mail correspondence—and CSC does not set forth evidence that the Vantage source code has been copied for use in that software's development. *See* Def.'s Resp., Doc. 22 at 6.

In addition to the March 25, 2019 e-mail allegedly showing an intent to disclose the source code to the BaNCS team, CSC alleges that one individual on the e-mail chain, Yogitha Kiran ("Kiran"), who initiated the e-mail inquiry about how to perform rate of return calculations, is a TCS software developer "who is believed to be" working on the development of BaNCS. Pl.'s Doc. 7 at 12. CSC's allegation as to this individual's involvement with BaNCS is purely speculative, however, as evidenced by CSC's own acknowledgment that Barnwal merely "believes" this individual is working on BaNCS. Pl.'s Appl., Doc. 7 at 12 ("[A] TCS software developer, who is believed to be working on the development of TCS' U.S. BaNCS, sent an email

**Memorandum Opinion and Order – Page 7**

inquiring about a rate of return[.]"). In its response, TCS states that Kiran "is not a software developer and she has no role in programming or developing any aspect of TCS's BaNCS Platform (or Vantage, for that matter)." Defs.' Resp., Doc. 22 at 11-12. The court does not believe that CSC's reliance on Kiran's inclusion in the e-mail correspondence is sufficient evidence that BaNCS developers were actively seeking and obtaining Vantage source code for the purpose of copying it to develop the BaNCS software.

In response to CSC's contention that the e-mail thread is proof of misappropriation, TCS argues that it was permitted to engage in this type of correspondence about Vantage code pursuant to its obligations under the license agreement between MSI/Transamerica and CSC. TCS asserts that CSC is aware that it maintains a "Vantage Team" that regularly works with Vantage source code and manuals to carry out its obligations to Transamerica to maintain, update, and troubleshoot the versions of the Vantage Platform licensed to Transamerica. Defs.' Resp., Doc. 22 at 9. TCS asserts that the e-mails arose because a Transamerica employee sent a routine request to certain TCS "Vantage Team" members for information about how Transamerica calculates rate of return calculations through the Vantage software for certain of its policies. Defs.' Resp. Doc. 22 at 11. TCS specifically explains:

> The inquiry at issue originated because Transamerica employee Charlie Plathe was reviewing an expected result excel spreadsheet ("ER Sheet") for [rate of return] and became concerned that the calculation formulas as laid out in the ER Sheet might not accurately account for one specific and unusual scenario. The subsequent conversations between TCS's TransAmerica Vantage Team and Transamerica's actuarial support team are an attempt by the two to reconcile this issue. Addressing this inconsistency was clearly within Transamerica's right so that it could make sure that it is consistently administering benefits according to its own policies no matter what software platform it was using.

Defs.' Resp., Doc. 22 at 12 (citing Plathe Decl. ¶¶ 9-16, Herring Decl. ¶ 10-17). TCS goes on to explain that, "to address this request from Transamerica, the Transamerica Vantage Team initially

consulted a Vantage manual to provide a high-level description to Transamerica's actuaries of how ROR was being calculated by Transamerica with the assistance of the Vantage Platform." Defs.' Resp., Doc. 22 at 13.

CSC counters that, under the license agreement, TCS may not use its access to Vantage to develop its competing BaNCS platform. CSC does not, however, adequately address TCS's argument that the context for the e-mails shows that its conduct was compliant with its confidentiality and nondisclosure obligations under MSI/Transamerica's license agreement. The court is simply unable to ascertain, without more explanation about the scope of the license agreement and TCS's permitted use of Vantage in performing its service provider functions for Transamerica, whether TCS was authorized to engage in the type of communications contained in the e-mails at issue.

Furthermore, the e-mail upon which CSC heavily relies—seeking "an intuitive approach to communicate to the BaNCS team"—was sent by an employee of Transamerica, who is not named as a defendant in this case. In providing context for this e-mail, Defendants explain that Transamerica employees inquired about how Vantage software performs certain functions so that it could decide how to perform such functions in the BaNCS system once it transitions to that platform, to ensure that Transamerica is calculating its policies in an accurate and consistent manner regardless of the software system it employs. Defs.' Resp., Doc. 22 at 14-15. Given the state of the record, the court is unable to ascertain whether TCS's actions in responding to Transamerica's inquiries were violative of the license agreements under which TCS was permitted to access Vantage and advise Transamerica on how to utilize the software program to administer its policies. Regardless of the veracity of Defendants' allegations, as previously mentioned, the court does not believe that the e-mails on their face are evidence of either actual or threatened misappropriation to satisfy CSC's burden to show substantial likelihood of the merits as to this

**Memorandum Opinion and Order – Page 9**

claim. While CSC may ultimately prevail on one of its claims, the record simply does not contain sufficient evidence to entitle CSC to a temporary restraining order at this stage.

### B. Unfair Competition and Tortious Interference with Plaintiff's Prospective Business Relationships

CSC has also failed to show that there is a substantial likelihood that it will succeed on the merits of its unfair competition and tortious interference with its prospective business relationships. CSC makes conclusory allegations that TCS has committed unfair competition and tortious interference but offers no evidence in support. Accordingly, CSC has failed to make the requisite showing that he is entitled to a temporary restraining order based on these claims.

## IV. Conclusion

For the reasons herein stated, Plaintiff has not met its burden of establishing the requirements for a temporary restraining order. The court therefore **denies** Plaintiff's Application for Temporary Restraining Order (Doc. 7). The court **directs** the parties to submit a proposed discovery and briefing schedule regarding the request for a preliminary injunction, and a suggested hearing date on the preliminary injunction. This schedule must be submitted by **May 13, 2019**.

**It is so ordered** this 9th day of May, 2019.

Sam A. Lindsay
United States District Judge