IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COMPUTER SCIENCES CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:19-CV-970-X(BH) |
| TATA CONSULTANCY SERVICES LIMITED, TATA AMERICA INTERNATIONAL CORPORATION, DOE DEFENDANTS 1-10, | § § § § § § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION

By order of reference filed August 22, 2019 (doc. 60), before the Court for recommendation is *Notice of Tata Consultancy Services Limited and Tata America International Corporation's Motion to Dismiss*, filed June 13, 2019 (doc. 43). Based on the relevant filings and applicable law, the motion should be **GRANTED** only as to the plaintiff's state law claims, which should be **DISMISSED with prejudice** as preempted by the Texas Uniform Trade Secret Act, and **DENIED** as to the plaintiff's Defend Trade Secret Act claim.

### I. BACKGROUND

Computer Sciences Corporation (Plaintiff) is a provider of business solutions software. (doc. 1 at 1.)[1] Through "decades of continuous development and hundreds of millions of dollars in investment," it developed two proprietary software systems, VANTAGE-ONE / Wealth Management Accelerator (Vantage) and Cyberlife (collectively Software), that are used to

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

administer and process life insurance and annuity policies. (*Id.* at 1,6.) The systems are capable of performing "complex calculations, processing, management and administration functions that are required to manage large portfolios of life insurance and annuity polices." (*Id.* at 6.) U.S. tax law, state tax law, and regulations have been integrated into the Software source code, which allows these platforms to administer insurance policies and annuities quickly, and in compliance with these laws and regulations. (*Id.*) These features maximize the value for those using Plaintiff's Software. (*Id.* at 7.)

Plaintiff licenses its Software to Money Services, Inc. (Licensee), a subsidiary of TransAmerica. (*Id.* at 7-8.) Licensee was allowed to process and administer policies using the Software under licensing agreements, which contained "stringent restrictions on access to and use of the [S]oftware" by its customers, and strict confidentiality and non-disclosure obligations. (*Id.* at 8.) Although the licensing agreements permitted Licensee limited access to the source code to maintain the systems residing on its server, and to customize certain aspects of the Software with Plaintiff's assistance, they required that use of the Software be only for Licensee's benefit. (*Id.*) Licensee could allow third-party access to one of its service providers, provided that the third party was bound by confidentiality and non-disclosure provisions and did not use the Software to benefit itself. (*Id.*)

In 2014, Licensee began using Tata Consultancy Services Limited and its wholly-owned subsidiary Tata America International Corporation (collectively Defendants), to support and maintain its IT systems. (*Id.* at 3,8.) Defendants were required to protect the confidentiality and propreitary nature of the Software, any related Software documentation, and Plaintiff's proprietary information. (*Id.* at 8-9) .

2

In January 2018, Defendants announced that they had entered into a partnership with TransAmerica to enter the United States insurance market. (*Id.* at 9.) At that time, they operated in the European market using a software system called BaNCS, which would be adapted to operate in the United States. (*Id.*) Plaintiff alleges that as a result of the deal, Defendants hired 2,200 of Licensee's employees, some of whom still had access to Plaintiff's Software, Software source code, Software documentation, and other confidential and proprietary information. (*Id.* at 10.)

In March 2019, Plaintiff learned through a series of emails that employees assigned to developing Defendants' BaNCS platform were having difficulty devising a software solution for calculating a rate of return (ROR). (*Id.* at 11.) In an email, an employee stated that the BaNCS software was not able to "capture" a particular ROR value, and that "maybe we should engage [TCS employees with access to the Vantage source code] if we want to emulate that?" (*Id.*) Plaintiff alleges that one employee copied nearly two pages from a Vantage user manual describing how it determined "Calculated investment return on Annuities," and said that he would "try to look into the code further." (*Id.*) This employee allegedly looked into its "transaction of interest" source code, circulated proprietary information regarding how Software performs that calculation, and then "copied and pasted actual Vantage source code pertaining to this calculation, and resulting Vantage calculations, into an email and sent it to his [] colleagues." (*Id.*)

Over the course of three weeks, Defendants' employees allegedly accessed and analyzed the Software documentation and Vantage source code to determine the method and process used by the Software to calculate the particular ROR in order to "determine what the calc is/should be doing to provide to the BaNCS team." (*Id.* at 12.) Plaintiff claims that Defendants are misusing its "confidential and proprietary information, including [its] source code, to develop its new BaNCS

3

platform for the United States." (*Id.* at 12.)

On April 22, 2019, Plaintiff filed this suit against Defendants and its employees (Doe Defendants 1-10), alleging trade secret misappropriation under the Defend Trade Secrets Act (DTSA), unfair competition, conspiracy, tortious interference with prospective economic advantage, and conversion. (*See* doc. 1.) On June 13, 2019, Defendants moved to dismiss Plaintiff's complaint. (doc. 43.) Plaintiff responded, and Defendants filed a reply. (docs. 45-46.)

## II. RULE 12(b)(6)

Defendants move to dismiss Plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (*See* doc. 43.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196; *see also Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)(all well-pleaded facts must be taken as true, and all reasonable inferences must be drawn in the nonmoving party's favor).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

4

action's elements will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 683.

As noted, a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. "Pleadings" for purposes of a motion to dismiss include attachments to the complaint. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [its] claim[s]." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citation omitted); *accord Benchmark Elecs., Inc.*, 343 F.3d at 725. It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir.

1994). When a party presents "matters outside the pleadings," a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). However, "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, Defendants contend that the email chain referenced and quoted in Plaintiff's complaint may be considered in determining the motion to dismiss because it is central to its claims. (docs. 44 at 13; 46 at 6.) They also argue that when a document contradicts the allegations in the Complaint, it controls. (*See* doc. 44 at 13.) Defendants did not attach the email chain to their motion, however, and it is not attached to Plaintiff's complaint. (*See* docs. 1;43;44.) It may therefore not be considered as part of the pleadings. *See Collins*, 224 F.3d at 498-99 (documents *attached* to a motion to dismiss are considered part of the pleadings if they are referred to in the complaint and central to the claim).

### III. DEFEND TRADE SECRET ACT

Defendants move to dismiss Plaintiff's DTSA claim for failure to state a claim. (doc. 44 at 13-20.)

The DTSA permits "[a]n owner of a trade secret that is misappropriated [to] bring a civil action . . .if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1); *see also Phazr, Inc. v. Ramakrishna*, No. 3:19-CV-01188-X, 2019 WL 5578578, at *3 (N.D. Tex. Oct. 28, 2019) (quoting 18 U.S.C. §

1836(b)(1)).  To state a claim under the DTSA, a plaintiff must allege: (1) a trade secret; (2) misappropriation; and (3) use in interstate commerce. *See Phazr, Inc.*, 2019 WL 5578578, at *3 (citing *Marek Brother Sys., Inc. v. Enriquez*, No. 3:19-CV-01082, 2019 WL 3322162, at *3 (N.D. Tex. July 24, 2019)).

A.      **Trade Secret**

Defendant contends that Plaintiff failed to plead any trade secret with sufficient particularity. (*See* doc. 44 at 19-20.)

A trade secret is defined as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically[.]" 18 U.S.C. § 1839(3).  The owner must take "reasonable measures under the circumstances to keep the information secret," and the information must derive economic value from not being generally known or readily ascertainable through proper means. *Id.*; *see also Marek Brother Sys., Inc.*, 2019 WL 3322162, at *3.  Information that is public knowledge or generally known cannot be a trade secret, and "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Richter v. Carnival Corp.*, No. 3:18-CV-2172-N, 2019 WL 5894213, at *7 (N.D. Tex. Nov. 12, 2019) (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984)).

Although it is not necessary for Plaintiff to disclose in detail in its complaint the allegedly misappropriated trade secrets, it must plead sufficient facts to put Defendants on notice of what is

7

alleged to have been misappropriated. *Source Prod. & Equip. Co. v. Schehr*, No. CV 16-17528, 2019 WL 4752058, at *5 (E.D. La. Sept. 30, 2019) (citing *Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1043-44 (S.D. Cal. 2017)).

Here, the complaint alleges that Plaintiff's Software, source code, ROR calculation, and Vantage user manuals are trade secrets because they consist of "methods, formulas, techniques, data, processes, and know-how" used to achieve the functions found in the Software, such as calculations, RORs, fund and policy valuations, and other complex data processing. (doc. 1 at 2,7.) Plaintiff allegedly derives a competitive advantage and economic value from its Software features that administer policies and annuities quickly and in compliance with applicable tax codes and regulations, and these features maximize the value of policies and annuities, which makes its Software "desirable to customers." (doc. 1 at 6-7.) Plaintiff also alleges that it "rigorously protects the confidentiality of its [Software], source code, software documentation an related proprietary information for its [Software] platforms," and that Software provided through licensing agreements is subject to strict limited access, use, confidentiality and non-disclosure provisions. (*Id.* at 2,7,8.) These allegations are sufficient specific to plausibly plead a trade secret. *See Scott Envtl. Servs., Inc. v. Newfield Expl. Co.*, No. 2:19-CV-00026-JRG-RSP, 2019 WL 6220968, at *2 (E.D. Tex. Oct. 23, 2019), *report and recommendation adopted*, No. 2:19-CV-00026-JRG-RSP, 2019 WL 6208544 (E.D. Tex. Nov. 20, 2019) (allegation that confidential information included steps necessary to determine monolith strength, subgrade strength, and how to affect hydraulic conductivity, sufficiently alleged the trade secret in question.)[2]

---

[2]Notably, in connection with Plaintiff's motion for a temporary restraining order, the court stated that "[a]s a preliminary matter, [it] is satisfied that the proprietary information at issue—the Vantage source code and user manual—is entitled to trade secret protection." (doc. 37 at 5.)

B.  **<u>Misappropriation</u>**

Defendants also contend that Plaintiff fails to allege misappropriation of a trade secret. (*See* doc. 44 at 14.)

Under the DTSA, "misappropriation" is defined as

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who—
    (i) used improper means to acquire knowledge of the trade secret;
    (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
        (I) derived from or through a person who had used improper means to acquire the trade secret;
        (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
        (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
    (iii) before a material change of the position of the person, knew or had reason to know that—
        (I) the trade secret was a trade secret; and
        (II) knowledge of the trade secret had been acquired by accident or mistake.

18 U.S.C. § 1839(5); *Phazr, Inc.*, 2019 WL 5578578, at *3. The term "improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means," but does not include "reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6). "To allege

---

[Plaintiff] has adequately alleged that the Vantage software system and accompanying user manual is entitled to trade secret protection and that [it] took reasonable measures under the circumstances to keep Vantage secret by "using technological and physical security systems, limiting access and use of CSC software, source code, and documentation, marking the source code and documentation as confidential and proprietary, and imposing strict confidentiality, non-disclosure and non-use requirements on those with access to the software, source code and documentation."

(*Id.* at 6.)

misappropriation of a trade secret, the plaintiff must make a threshold showing of the actual acquisition, disclosure, or use of that trade secret." *Phazr, Inc.*, 2019 WL 5578578, at *3.

Here, Plaintiff alleges that emails show that Defendants' BaNCS development team was experiencing difficulty "devising a software solution for calculating a rate of return," and that an employee suggested that they engage Defendants' employees with access to the Vantage source code if they wanted to emulate that calculation. (doc. 1 at 11.) Over the course of three weeks, Defendants' employees allegedly accessed and analyzed its proprietary documentation and source code "to determine the method and process by which Vantage calculates" a particular ROR in order "to determine what the calc is/should be doing to provide to the BaNCS team." (*Id.* at 11-12.) Despite strict confidentiality agreements limiting its access to and use of its source code and manuals, Plaintiff alleges, an employee copied nearly two pages from a Vantage manual describing how Plaintiff's software "Calculated Investment Return on Annuities." (doc. 1 at 11.) The same employee allegedly looked into "transactions of interest" that were accessed by the Vantage source code in performing the calculation and sent it to other employees. (*Id.*) Another employee allegedly "copied and pasted the actual Vantage source code pertaining to this calculation, and resulting Vantage calculations, into an email and sent it to his TCS colleagues." (*Id.*) Plaintiff claims that Defendants improperly accessed its source code and used it to develop Defendants' "BaNCS software platform and [to] unfairly compete with [Plaintiff]."

As noted, all well-pleaded facts must be taken as true, and all reasonable inferences must be drawn in the nonmoving party's favor. *Baker*, 75 F.3d at 196; *Club Retro, L.L.C.*, 568 F.3d at 194. Plaintiff alleges that Defendants disclosed its trade secrets when they allegedly accessed, copied, and shared its source code, user manual, and proprietary information for the purpose of providing

it to the BaNCS development team, and that Defendants misappropriated its trade secrets and proprietary information when they allegedly used that information in the development of their BaNCS software. Taking these factual allegations as true, as the Court must, and drawing all reasonable inferences from those facts in its favor, Plaintiff has plausibly alleged misappropriation by unauthorized disclosure and use. *See Lifesize, Inc. v. Chimene*, No. 1:16-CV-1109-RP, 2017 WL 1532609, at *9 (W.D. Tex. Apr. 26, 2017) ("[I]t is not necessary for the defendant's acquisition to be wrongful; the plaintiff may instead show that the defendant permissibly acquired the information within a relationship of confidence and later disclosed or used the information in violation of that confidence."); *see also* 18 U.S.C. § 1839(6)(A); *see Windsor v. Olson*, No. 3:16-CV-934-L, 2019 WL 2080021, at *19 (N.D. Tex. May 10, 2019) (misappropriation also includes, in part, disclosure or use of a trade secret of another without express or implied consent).

Defendants contend that Plaintiff does not "identify a single feature of functionality in any of [its] products that . . . suggest it was developed using [Plaintiff's] proprietary information." (doc. 44 at 18.) At this stage of the pleadings, Plaintiff must only allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Plaintiff has sufficiently alleged facts to support an inference that Defendants were accessing and using its confidential, proprietary and trade secret information to develop a competing software platform. *See Clean Energy v. Trillium Transportation Fuels LLC*, No. CV H-19-244, 2019 WL 1522521, at *3 (S.D. Tex. Mar. 22, 2019), *report and recommendation adopted*, No. CIVILACTIONH19244, 2019 WL 1515123 (S.D. Tex. Apr. 8, 2019) ("The Complaint alleges that [the defendant] used [the plaintiff's] trade secrets [] to solicit business from [the plaintiff's] customers. Therefore, the Complaint satisfies the 12(b)(6) pleading standard as to the "use" element of its DTSA claim."). "Whether Defendants disagree with

11

the narrative told by Plaintiff[] is of no moment, as the court simply is dealing with this case at the motion-to-dismiss stage and only tests the sufficiency of the pleadings." *May v. City of Arlington, Texas*, 398 F. Supp. 3d 68, 75–76 (N.D. Tex. 2019), *supplemented*, No. 3:16-CV-1674-L, 2019 WL 1429662 (N.D. Tex. Mar. 28, 2019).  At this stage it is not for the court to determine if Plaintiff's allegations will ultimately prove to be true.  *Id.*

Defendants' motion to dismiss Plaintiff's DTSA claim should be denied.

## IV. TEXAS UNIFORM TRADE SECRET ACT

Defendants argue that the Texas Uniform Trade Secrets Act (TUTSA) preempts Plaintiff's state law claims for unfair competition, conspiracy, tortious interference, and conversion.  (doc. 1 at 14.)[3]

TUTSA's preemption provision states:

(a) Except as provided by Subsection (b), this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.

(b) This chapter does not affect:

> (1) contractual remedies, whether or not based upon misappropriation of a trade secret;

> (2) other civil remedies that are not based upon misappropriation of a trade secret; or

> (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

---

[3] "Because the alleged misappropriation occurred after September 1, 2013, TUTSA, not common law trade secret misappropriation . . . , governs this dispute." *StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, No. 4:17CV303, 2019 WL 4346538, at *16 (E.D. Tex. Sept. 12, 2019).

12

Tex. Civ. Prac. & Rem. Code § 134A.[4]

While the Fifth Circuit Court of Appeals has not addressed the scope of TUTSA's preemption provision, district courts in this circuit have found that to the extent a plaintiff's tort claim is premised on the same facts as its claim for misappropriation, it is preempted. *See*, e.g., *StoneCoat of Texas, LLC v. ProCal Stone Design*, LLC, No. 4:17CV303, 2019 WL 4346538, at * (E.D. Tex. Sept. 12, 2019); *ScaleFactor, Inc. v. Process Pro Consulting, LLC*, 394 F. Supp. 3d 680, 686 (W.D. Tex. 2019) (breach-of-fiduciary-duty claim is preempted only insofar as it relies on allegations that defendants misappropriated trade secrets); *360 Mortgage Group, LLC v. Homebridge Financial Servs., Inc.*, No. A-14-CA-847-SS, 2016 WL 900577, at *6-8 (W.D. Tex. March 2, 2016). They found that TUTSA was intended to preempt all claims based on misappropriation of a trade secret, and to allow multiple theories of relief for the same underlying harm would be to read the preemption provision too narrowly. *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-CV-444-RP, 2018 WL 315753, at *3 (W.D. Tex. Jan. 5, 2018). A claim will not be preempted if the plaintiff can show that the claim is based on facts unrelated to the misappropriation of the trade secret. *360 Mortg. Grp.*, 2016 WL 900577, at *6.

**A.** **Unfair Competition**

Defendants argue that Plaintiff's unfair competition claim is preempted by TUTSA. (doc. 44 at 20.)

"There are few Texas cases analyzing TUTSA preemption in this context, but other cases analyzing identical provisions of the applicable Uniform Trade Secrets Acts are instructive." *AMID,*

---

[4] TUTSA is based on the Uniform Trade Secrets Act (UTSA), which contains a nearly identical preemption provision. *BCOWW Holdings, LLC v. Collins*, No. SA-17-CA-00379-FB, 2017 WL 3868184, at *15 (W.D. Tex. Sept. 5, 2017); *see also StoneCoat of Texas, LLC*, 2019 WL 4346538, at *14.

*Inc. v. Medic Alert Found. United States, Inc.*, 241 F. Supp. 3d 788, 826 (S.D. Tex. 2017). Courts have held that to the extent an unfair competition claim is based on the same facts as its claim for misappropriation of trade secrets, it is preempted. *See id.* at 825-26.

Here, the basis for Plaintiff's unfair competition claim is the alleged misappropriation of its trade secret and confidential information used in connection with the Software systems. It alleges that Defendants have improperly used its "confidential and proprietary information in the development of a [competing] product." (doc. 1 at 15.) It also alleges that these "wrongful actions constitute unfair competition" because Defendants are using Plaintiff's "substantial investment" to create a competing product. (*Id.*) It fails to alleges facts separate from its misappropriation of trade secret claim that could support a claim for unfair competition.

The focus of preemption "is on whether the facts relied on to support the unfair-competition claim differ from those supporting the TUTSA claim." *AMID, Inc.*, 241 F. Supp. 3d at 826 (citing *Secure Energy, Inc. v. Coal Synthetics, LLC*, Civ. No. 4:08-CV-1719, 2010 WL 1691454, at *3 (E.D. Mo. Apr. 27, 2010)). "TUTSA's preemption provision encompasses all claims based on the alleged improper taking of confidential business information." *Embarcadero*, 2018 WL 315753, at *3. Plaintiff's unfair competition claim is preempted by TUTSA because it is "based on the unauthorized use of information—trade secret or not." *StoneCoat of Texas, LLC*, 2019 WL 4346538, at *19 (internal quotation marks omitted). Because Plaintiff fails to allege facts independent of its misappropriation of trade secrets claim, its unfair competition claim is wholly preempted by TUTSA.

**B.     Conspiracy**

Defendants also argue that Plaintiff's claim for conspiracy is preempted by TUTSA. (doc.

44 at 14, 20.)

As noted, the Fifth Circuit has not addressed the scope of TUTSA's preemption provision. Other circuits analyzing similar preemption provisions have held that a claim for conspiracy based on a misappropriation of trade secrets is preempted. In *Stolle Mach. Co., LLC v. RAM Precision Indus.*, 605 F. App'x 473, 486 (6th Cir. 2015), the Sixth Circuit Court of Appeals held that a state's trade secret act, which contained a preemption provision identical to the one in TUTSA, preempted a plaintiff's conspiracy claim. It noted that "[e]ven though proof of conspiracy requires proving additional facts . . . beyond the underlying unlawful act, the conspiracy claim is dependent on proof of the underlying act—here, misappropriation of trade secrets." *Stolle Mach. Co., LLC*, 605 F. App'x at 486.

Here, Plaintiff alleges a conspiracy between Defendants and the Doe defendants to misappropriate its trade secrets and confidential information. (doc. 1 at 16.) It claims that the "conspiracy was undertaken and carried out with the purpose of misappropriating [Plaintiff's source code and software[.]" (*Id.*) Plaintiff's fails to plead facts to support a plausible claim to relief that is not based on the alleged misappropriation by Defendants. *See Gaedeke Holdings VII LTD v. Baker*, 683 F. App'x 677, 680 (10th Cir. 2017) (affirming dismissal of the plaintiff's conspiracy and conversion claims, "because those claims depended on the same facts alleged to support the claim for misappropriation of trade secrets."). Because Plaintiff fails to alleges facts independent of its misappropriation of trade secrets claim to plausibly entitle it to relief, its conspiracy claim is preempted by TUTSA.

**C.     Tortious Interference**

Defendants argue that Plaintiff's tortious interference claim is preempted by TUTSA. (*See*

15

doc. 44 at 20.)

Here, Plaintiff alleges that Defendants misappropriated its trade secrets to develop a "software system to steal business" from it. (doc. 1 at 17.) Plaintiff's allegations that Defendants "tortiously inferred with [its] prospective economic advantage," and that its "illicit development of a software system to steal business from [Plaintiff] tortiously interferes with [its] prospective economic advantage in this industry" are based entirely on the misappropriation claim. It fails to allege what business relationship it would have entered into or that there existed a contractual relationship with which Defendants interfered.

Because Plaintiff fails to plead facts independent of its misappropriation claim that could support a plausible claim for tortious interference, it is preempted by TUTSA. *See StoneCoat of Texas, LLC*, 2019 WL 4346538, at *20 (the plaintiff's claim for tortious interference was preempted by TUTSA because it was based on the alleged improper taking of trade secret and confidential business information); *see also Am. Mortg. & Equity Consultants, Inc. v. Bowersock*, No. 1:19-CV-432-RP, 2019 WL 2250170, at *5 (W.D. Tex. May 24, 2019), *reconsideration denied*, No. 1:19-CV-492-RP, 2019 WL 4087400 (W.D. Tex. June 21, 2019) (holding that the plaintiff's tortious interference claim was preempted by the TUTSA). Accordingly, Plaintiff's tortious interference claim is preempted under TUTSA.

**D.      Conversion**

Finally, Defendants argue that Plaintiff's conversion claim is preempted by TUTSA, or alternatively, that it fails because it is based on intangible property. (doc. 44 at 20, 29.)

Courts have held that where a misappropriation claim and a conversion claim "stem from the same underlying harm—the taking of [Plaintiff's] confidential information"—its conversion

claim is preempted by TUTSA. *Embarcadero*, 2018 WL 315753, at *3; *see also ScaleFactor, Inc.*, 394 F. Supp. 3d at 685; *StoneCoat of Texas, LLC*, 2019 WL 4346538, at *18. Not all claims for conversion are preempted by TUTSA, however. *Lifesize, Inc*, 2017 WL 1532609, at *12. When a plaintiff's conversion claim "is addressed to the harm stemming from the loss of the tangible item itself, rather than the trade secret it contains, it seeks relief from harm other than for the misappropriation of its trade secret." *Id.*

Here, Plaintiff's conversion claim is based on the alleged copying of text from its Vantage manuals and Software source code. It does not seek the value of a tangible item; it seeks damages for the unauthorized disclosure and use of its trade secrets. *StoneCoat of Texas, LLC*, 2019 WL 4346538, at *18 (conversion claim for the physical envelope containing papers describing trade secret formula was preempted). Because Plaintiff failed to plead facts to support this claim apart from those supporting its misappropriation claim, its conversion claim is also preempted by TUTSA. *360 Mortg. Grp., LLC* , 2016 WL 900577, at *8.

In conclusion, Plaintiff's state law claims for unfair competition, conspiracy, tortious interference with a prospective economic advantage, and conversion are preempted by TUTSA and should be dismissed.[5]

## VI. CONCLUSION

Defendants' motion to dismiss should be **GRANTED** as to the plaintiff's state law claims, which should be **DISMISSED with prejudice** as preempted by the Texas Uniform Trade Secret Act, and **DENIED** as to its Defend Trade Secret Act claim.

---

[5] Because Plaintiff's state law claims are subject to dismissal on this basis, it is unnecessary to reach Defendants' remaining arguments for dismissal.

**SO RECOMMENDED** on this 7th day of February, 2020.

                                                  IRMA CARRILLO RAMIREZ
                                                  UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                                  IRMA CARRILLO RAMIREZ
                                                  UNITED STATES MAGISTRATE JUDGE