UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COMPUTER SCIENCES CORP.,<br><br>*Plaintiff*,<br><br>v.<br><br>TATA CONSULTANCY SERVICES LTD. and TATA AMERICA INTERNATIONAL CORP.,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:19-CV-0970-X |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Computer Sciences Corp. (CSC) sued Defendants Tata Consultancy Services Ltd. and Tata America International Corp. (collectively, "TCS") alleging willful and malicious trade secret misappropriation under the federal Defend Trade Secrets Act of 2016 (DTSA). Following the entry of judgment, CSC filed a motion to determine the amount of attorney's fees to be awarded,[1] which this Court denied without prejudice pending appeal.[2] TCS appealed the judgment to the Fifth Circuit and then to the Supreme Court.[3] Now that the appeals are resolved, CSC renewed its motion for attorney's fees and costs, and the motion is now ripe.[4] CSC requests that the Court award it $15,811,695.76 in attorney's fees and $1,780,169.67 in costs

[1] Doc. 536.

[2] Doc. 548.

[3] Docs. 553, 609.

[4] Docs. 592, 600.

in connection with this matter.[5] For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** CSC's motion, **ORDERS** TCS to pay CSC $15,291,490.97 in attorney's fees, and directs CSC to file a bill of costs within 14 days.[6]

## I. Legal Standard

"Once a district court concludes that a party is entitled to attorney's fees, it must utilize the lodestar method to determine the amount to be awarded."[7] The lodestar method requires the Court to "determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys, and then multiply the two figures together to arrive at the lodestar."[8] After calculating the lodestar, the Court may adjust that number "upward or downward, depending on the circumstances of the case."[9] The word "reasonable" does not necessarily limit the parties to fees actually incurred.[10]

## II. Analysis

The Court considers whether CSC is entitled to the full amount of attorney's fees and costs it requests.

---

[5] Doc. 592.

[6] Because the Court has previously recounted the factual background of this case, it omits that background here. *See* Doc. 530.

[7] *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997).

[8] *Id.* (cleaned up).

[9] *Id.*

[10] *Diverse Enters., Ltd. v. Beyond Int'l, Inc.*, 827 F. App'x 422, 425 (5th Cir. 2020).

### A. Attorney's Fees

CSC requests that it be awarded attorney's fees in connection with this matter.[11] TCS makes six challenges to CSC's request.[12]

#### 1. Hourly Rates

CSC must show that the rates their attorneys charged are "reasonable hourly rates."[13] For rates to be reasonable, they must be "in line with those in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[14] TCS argues CSC's hourly rates for counsel are unreasonable in three respects.

First, TCS argues that CSC's requested reimbursement of Baker Botts's standard rates is unreasonable because Baker Botts's standard rates are higher than Crowell Moring despite being a "firm of similar size and reputation."[15] But TCS provides no evidence for this argument.[16] Baker Botts's trial work should command a higher rate than Crowell's pre-trial work.[17] After all, the record suggests a discrepancy in work performed by each of these firms. Crowell served as lead counsel

---

[11] Doc. 592.

[12] Doc. 595.

[13] *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *SCA Promotions, Inc. v. Yahoo! Inc.*, No. 3:14-CV-0957-O, 2016 WL 8223206, at *7 (N.D. Tex. Nov. 21, 2016) (Ramirez, M.J.), *report and recommendation adopted*, No. 3:14-CV-0957-O, 2017 WL 514545 (N.D. Tex. Feb. 8, 2017) (O'Connor, J.), *aff'd*, No. 17-10239, 2017 WL 11689639 (5th Cir. Nov. 7, 2017) (per curiam).

[14] *Clapper v. Am. Realty Inv'rs, Inc.*, No. 3:14-CV-2970-X, 2023 WL 5618947, at *1 (N.D. Tex. Aug. 30, 2023) (Starr, J.), *vacated*, No. 3:14-CV-2970-X, 2024 WL 6077531 (N.D. Tex. Apr. 22, 2024) (Starr, J.).

[15] Doc. 595-3 at 3.

[16] *See id.* at 3–8.

[17] *See Day v. Amoco Chemicals Corp.*, 595 F. Supp. 1120, 1125 (S.D. Tex. 1984) (noting trial work should command a higher rate than pre-trial work).

through this Court's motion to dismiss ruling in 2020.[18] Following that ruling, Baker Botts replaced Crowell as lead counsel through high-stakes litigation in what became the one of the 10 largest verdicts in Texas in 2023, one of the 25 largest verdicts in the United States in 2023, and the largest trade secret award in the country in 2023.[19] Absent evidence to the contrary, the Court declines to reduce CSC's award by following TCS's reasoning that Baker Botts's standard rates are unreasonable because they are simply higher than Crowell's.

Second, TCS argues that CSC should have used the discounted rate Baker Botts actually charged CSC due to the parties' longstanding relationship as opposed to Baker Botts's standard rate (which is significantly higher).[20] But TCS failed to support its objection by pointing this Court to a case where parties contested whether a discount rate or standard rate should apply to the attorney's fee award and the Court chose to award the discount rate.[21] And the Supreme Court and Fifth Circuit have made clear that the court must award a reasonable fee, not necessarily an incurred fee.[22]

---

[18] Doc. 592-4 at App. 38–39.

[19] Doc. 592-2 at App. 8; *See also* Ivan Moreno, *Supreme Court Skips Challenge To $168M Trade Secret Award*, LAW360 (June 15, 2026, at 10:03 AM EDT), https://www.law360.com/articles/2488912/supreme-court-skips-challenge-to-168m-trade-secret-award [https://perma.cc/HZ98-PBUA].

[20] Doc. 595-3 at 3.

[21] *Id.* at 8–9.

[22] *Diverse Enters., Ltd.*, 827 F. App'x 422, 425 (5th Cir. 2020) ("The word 'reasonable' does not necessarily limit the parties to fees actually incurred." (*citing Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989)("Should a fee agreement provide less than a reasonable fee . . . the defendant should nevertheless be required to pay the higher [market-based] amount."))).

The Court finds awarding Baker Botts's standard rate despite charging CSC a discounted rate is reasonable in light of the complexity of this matter and prevailing rates charged in the locality. Baker Botts's standard rates in this case from 2020–26 were $1,060–$2,055 for partners, $520–$1,560 for special counsel and associates, and $340–$535 for paralegals.[23] Baker Botts's lead counsel states that these rates are reasonable according to the customary and prevailing rates in civil disputes in Texas for attorneys possessing similar skill and expertise.[24] CSC also establishes through sworn testimony that peer law firms charge similar rates for similar services, including (as most relevant to this case) Vinson & Elkins LLP's recent standard rates of $1,485-$2,050 for partners and $900-$1,425 for associates.[25] Accordingly, the Court finds Baker Botts's standard, market-based rates to be reasonable.

Further, a reasonable fee is not limited to fees actually incurred,[26] and the Court does not wish to disincentivize attorneys and law firms from charging clients a discounted rate in light of a longstanding relationship or similar situations.[27] Refusing to use Baker Botts standard rates to calculate the lodestar fee in this case

---

[23] Doc. 592-2 at 18.

[24] *Id.* at 18–20.

[25] Doc. 592 at 13 (citing *In re: Core Sci, Inc., et al.*, Case No. 22-90345 (CML), Doc. 1080, Ex. A, at 1–2 (Bankr. S.D. Tex. Feb. 2, 2024)).

[26] *Diverse Enters., Ltd.*, 827 F. App'x at 425.

[27] *See id.* (expressing that Courts are not limited to fees actually incurred when determining what constitutes a reasonable rate in a given case) (cleaned up); *See also Hernandez v. U.S. Customs & Border Prot. Agency*, 2012 WL 398328, at *17 (E.D. La. Feb. 7, 2012) (noting that one of the purposes behind the *Johnson* factors is to compensate attorneys who have discounted their fees to longstanding clients) (cleaned up).

would work to undermine such relationships and initiatives, and the Court accordingly declines to reduce the lodestar.

Third, TCS argues that CSC fails to illustrate that UnitedLex's rates are reasonable.[28] The Court disagrees. As background, CSC opted to use UnitedLex for document review instead of Baker Botts associates or the Baker Botts trial team. TCS first notes that CSC does not even identify the number of attorneys used or their credentials[29] and provides that UnitedLex's invoices include only hourly rates for different categories of review, which sometimes vary between invoices.[30] However, CSC counters that if the most junior member of Baker Botts's litigation team in 2021 had completed the entire document review, it would have cost $3,627,415 at CSC's discounted rate (7,183 hours at $505/hour) and $4,848,525 at Baker Botts's standard rates (7,183 hours at $675/hour).[31] Again, the question is what a reasonable fee is—not what fee CSC actually incurred. Baker Botts's use of UnitedLex effectively saved about four million dollars or more in attorney's fees TSC now has to pay. This is a reasonable fee. TSC should be thankful the Court is not awarding Baker Botts fees for document review. Accordingly, the Court finds that UnitedLex's fees are reasonable and declines to reduce (or increase) the lodestar for that reason.

---

[28] Doc. 595-3 at 9.

[29] *Id.*

[30] *Compare, e.g.*, Doc. 592-16 at 1623 ("Document Review - Privilege Log" at $55/hour), *and id.* at App. 1635 ("Document Review Management" at $150/hour), *with id.* at App. 1627 ("Document Review - Privilege Log" at $28/hour), *and id.* at App. 1628 ("Document Review Management" at $120/hour).

[31] Doc. 592 at 16.

### 2. Appellate Hours

"Generally, a party seeking attorney fees must specifically plead for attorney fees in order to put its adversaries on notice that attorney fees are at issue."[32] "[A] claim for attorney's fees and related nontaxable expenses must be made by motion filed no later than 14 days after the entry of judgment."[33] The Federal Rules defines "judgment" as "a decree and any order from which an appeal lies."[34] TCS asserts that CSC is not entitled to fees pertaining to hours spent on appellate litigation.[35]

TCS argues that CSC's request for appellate attorney's fees fails procedurally because it is the first time CSC has requested appellate attorney's fees.[36] However, CSC filed a motion for appellate attorney's fees and costs within the adjusted 30-day window the Court set.[37]

TCS further argues that CSC's request for appellate attorney's fees fails on the merits because nothing in the DTSA expressly permits a district court to award appellate fees to the prevailing party.[38] But the DTSA states that reasonable attorney's fees may be awarded to the prevailing party, without any qualifying

---

[32] *Clapper*, 2023 WL 5618947, at *7 (cleaned up).

[33] FED. R. CIV. P. 54 (cleaned up).

[34] *Id.*

[35] Doc. 595-3 at 10.

[36] *Id.*

[37] Doc. 598 ("CSC may file a renewed motion for fees within thirty days of issuance of the mandate from the United States Court of Appeals for the Fifth Circuit."); Doc. 587 (Fifth Circuit mandate on December 29, 2025); Doc. 592 (CSC's renewed motion for attorney's fees and costs a month later on January 28, 2026.).

[38] Doc. 595-3 at 11.

language to a distinction between trial or appellate fees.[39] Therefore, the DTSA does not expressly state a court may not award appellate attorney's fees to the prevailing party, either. The precedent within the Fifth Circuit is consistent with awarding attorney fees generally.[40] The Court declines to reduce the lodestar with respect to appellate fees.

### 3. Block Billing

Block billing occurs when a lawyer specifies the "total daily time spent working on a case, rather than itemizing the time expended on specific tasks."[41] "Courts disfavor the practice of block billing because it impairs the required reasonableness evaluation."[42] Block billing is a problem when it prevents a court from accurately determining whether the hours billed are reasonable.[43] "Most courts that have addressed the problem of block billing have concluded that denying all block-billed attorney's fees is not an appropriate remedy."[44] The remedy for improper block

---

[39] 18 U.S.C. § 1836(b)(3)(D).

[40] *See MGMTL, LLC v. Strategic Tech. Inst., Inc.*, 776 F. Supp. 3d 419, 469 (E.D. La. 2025) ("The Fifth Circuit has held that a party may recover additional attorney's fees as a successful appellee in a copyright infringement case.").

[41] *Clapper*, 2023 WL 5618947, at *6 (citing *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.), *aff'd*, No. 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007)).

[42] *Id.*

[43] *Id.*

[44] *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *5 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.), *aff'd*, No. 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007) (citing *Trulock v. Hotel Victorville*, 92 F. App'x 433, 434 (9th Cir. 2004) (holding that block billing "is not a basis for refusing to award attorney's fees")).

billing is typically a 10% to 30% percentage reduction in either the number of hours or in the lodestar figure.[45]

CSC does not dispute that its invoices include block billing, yet CSC argues the Court should not reduce its fee award due to block billing.[46] CSC's invoices reveal numerous instances where attorneys billed multiple tasks in a single entry spanning multiple hours.[47] CSC notes the following as reasoning against reducing the lodestar for block billing:

> Each of the three firms' time entries all contain the attorney's initials, date, number of hours expended, and a brief description of the work performed, most are for fewer than six hours, and the longer time entries offer more substantive, detailed descriptions of the different types of work performed during those periods.[48]

This misses the point against block billing; the issue is not only what the task is, but also how much time was spent on each task. Despite the detailed summaries on block billed entries going beyond six hours, the Court cannot determine the time spent on those related tasks and is unable to conduct meaningful review as a result.

The Court finds that Sumner Schick block billed approximately 27.21% of the time, Baker Botts block billed approximately 2.40% of the time, and Crowell block billed approximately 9.75% of the time. The Court does not want to penalize firms for others' poor billing practices, so these percentages are considered individually for

---

[45] *Barrow*, 2005 WL 6789456, at *5 ("The reduction usually ranges between 10% to 30%.") (cleaned up).

[46] Doc. 592 at 17 (noting that some of the entries contain block billing).

[47] *See, e.g.*, Doc. 592-10 at App. 1255.

[48] Doc. 592 at 17 (cleaned up).

calculating the total lodestar reduction warranted. Accordingly, the Court reduces each firm's block billed hours by 30%, totaling a 1.50% reduction in the lodestar.[49]

### 4. Changing Counsel

TCS asserts that CSC's change in counsel supports a further 25% reduction. TCS correctly points to an established precedent within the Northern District that "where there is turnover of attorneys working on a case, courts exclude the time expended by the new attorney to become familiar the case."[50] CSC did not address or reply to this objection raised by TCS. Because April 2020 was the primary month where CSC changed counsel, the Court finds it proper to reduce the 95.2 hours that month billed by Baker Botts attorneys.[51] Accordingly, the Court reduces the total

---

[49] The Court reaches this number by taking each firm's percentage of block billing out of each firm's total invoice to CSC, taking 30% of those amounts, adding up those amounts among all three firms, dividing the sum by CSC's requested lodestar amount, and multiplying that by 100. *See* Doc. 592 at 6.

**Block Billing Lodestar Reduction Calculation**

| | | | | |
|---|---|---|---|---|
| **Sumner Schick:** | 27.21% of $1,451,397.50 | = $394,925.26 | 30% of $394,925.26 | = $118,477.58 |
| **Baker Botts:** | 2.40% of $13,738,824.89 | = $329,731.80 | 30% of $329,731.80 | = $98,919.54 |
| **Crowell** | 9.75% of $402,220.87 | = $39,216.53 | 30% of $39,216.53 | = $11,764.96 |
| Sum of each firm's block billing amount reduced by 30%: | | | | = $229,162.08 |
| **Percent of CSC's total lodestar amount** | | | $229,162.08 x 100 / $15,811,695.76 | **= 1.50%** |

[50] *See* Doc. 595-3 at 17 (citing *Fabela v. City of Farmers Branch*, No. 3:10-CV-1425-D, 2013 WL 2655071 (N.D. Tex. June 13, 2013) (Fitzwater, C.J.) (cleaned up); *Paris v. Dall. Airmotive, Inc.*, No. 3:97-CV-0208-L, 2004 WL 2100227, at *5 (N.D. Tex. Sept. 21, 2004) (Lindsay, J.) (noting that a defendant should not be required to pay more than one attorney or set of attorneys for going over the same thing) (cleaned up)).

[51] Doc. 595-3 at 17.

lodestar by 0.45%, rather than an excessive 25% to account for duplicative work amounting to 95.2 hours.[52]

**5. Motions Granted Against CSC**

TCS argues that CSC should not recover time for motions to compel granted against it.[53] At least 375 of the hours CSC requests the Court award it attorney's fees for were at least partially spent responding to TCS's meritorious motions.[54] CSC argues that it should recover for time spent on unsuccessful motions because it succeeded its overall claim.[55] However, CSC's argument relies on a case where the Fifth Circuit applies Texas law.[56] This case is governed by federal law. The precedent in the Northern District of Texas is to "reduc[e] hours spent on unsuccessful motions."[57] Therefore, the Court reduces the lodestar by 1.34%, to account for the 375 hours spent responding to TCS's meritorious motions.[58]

---

[52] The Court reaches this 0.45% number by dividing 92.5 hours by the total number of hours CSC's counsel spend on the case (20,760 hours) and multiplying that number by 100. *See* Doc. 592 at 7, 9, 15; Doc. 595-3 at 18.

[53] Doc. 595-3 at 18.

[54] *See, e.g.*, Doc. 595-5 at App. 36–84 (highlighting exemplary entries that appear to relate to granted motions to compel filed by TCS).

[55] Doc. 592 at 16.

[56] *See id.* (citing *DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 434 (5th Cir. 2003) ("State law governs the award of attorneys' fees in this case.")).

[57] *See, e.g.*, *Clapper*, 2023 WL 5618947, at *6 (reducing fees for time spent on motions to compel granted against party seeking fees); *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, No. CIV. A. 307-CV-924-O, 2009 WL 361956 (N.D. Tex. Feb. 13, 2009) (O'Connor, J.) (finding that hours of time spent working on an motion to compel cannot be recovered because the Court denied such motion), *aff'd in part, vacated in part*, 612 F.3d 800 (5th Cir. 2010).

[58] The Court reaches 1.34% by dividing 375 hours into the total number of hours CSC's counsel spent on the case (20,760 hours) and multiplying that number by 100. *See* Doc. 592 at 7, 9, and 15; Doc. 595-3 at 18.

### 6. Billing Judgment

A party seeking fees must show that it exercised billing judgment.[59] "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."[60] But "bald assertions regarding the exercise of billing judgment are insufficient."[61] TCS notes that CSC's affidavits each claim to exercise billing judgment, but argues CSC does not provide enough specifics, specifically about the time excluded beyond five instances, across five years of work, that illustrate such judgment.[62] However, TCS fails to raise that Baker Botts's wrote down nearly 500 hours of work resulting from specific tasks.[63] The Court finds that a specific showing of billing judgment was provided through that affidavit, and declines to reduce the lodestar because of lack of billing judgment.

***

Taking the lodestar analysis all together, the Court reduces the total lodestar by 3.29%.

## B. Costs

Costs should be allowed to the prevailing party, and the clerk may tax costs on 14 days' notice.[64] There's "a strong presumption that the prevailing party will be

---

[59] *Clapper*, 2023 WL 5618947, at *6.

[60] *Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, No. 3:09-CV-0752-D, 2011 WL 487754, at *3 (N.D. Tex. Feb. 11, 2011) (Fitzwater, C.J.).

[61] *Id.*

[62] Doc. 595-3 at 19.

[63] Doc. 592-2 at App. 9.

[64] FED. R. CIV. P. 54(d)(1) (cleaned up).

awarded costs," and a court may "reduce a prevailing party's request for cost" only after "first articulating some good reason for doing so."[65] "Despite the presumption in favor of awarding costs, federal courts may only award costs authorized by statute."[66] TCS objects to CSC's request for both (1) taxable and (2) non-taxable costs.

### 1. Non-taxable Costs

CSC requests $1,780,169.67 in certain non-taxable costs, including expert witness fees, jury consultant fees, mediation fees, and e-discovery fees.[67] The Court does not reach the issue of whether these costs were reasonably incurred, because it finds that it lacks authority to award CSC non-taxable costs under the DTSA. While Federal Rule of Civil Procedure 54(d) provides a procedure for a party to seek an award of non-taxable costs, whether those costs are available is a matter of substantive law.[68]

While some courts have held that non-taxable costs are awardable under statutes which permit the court to award attorney's fees,[69] the Court finds these cases inconsistent with the controlling precedent. In *Rimini Street, Inc. v. Oracle USA,*

---

[65] *Clapper*, 2023 WL 5618947, at *8 (*citing Pacheco v. Mineta*, 448 F.3d 783, 793–94 (5th Cir. 2006)).

[66] *Giner v. Est. of Higgins*, No. EP-11-CV-126-KC, WL 2397440, at *2 (W.D. Tex. June 22, 2012) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987)).

[67] Doc. 592 at 22–24.

[68] *See, e.g.*, *Playboy Enters, Inc. v. Sanchez-Campuzano*, 2012 WL 12877432, at *1 (S.D. Tex. Apr. 19, 2012) (noting that Rule 54 provides only the procedural means through which a "party may seek attorney's fees and related nontaxable expenses.") (cleaned up); *Kinnison v. City of S.A.*, No. 08-CV-421-XR, 2011 WL 1399094, at *2 (W.D. Tex. Apr. 12, 2011) (stating that unless otherwise authorized by statute, the types of costs that may be awarded under Rule 54(d) are limited to those enumerated in 28 U.S.C. § 1920) (cleaned up).

[69] *See Barrett Bus. Servs., Inc. v. Colmenero*, No. 24-4474, 2025 WL 2048985, at *3 (9th Cir. July 22, 2025) (collecting cases).

*Inc.*, the Supreme Court held that parties seeking costs under the Copyright Act may recover only taxable costs, despite the statute's reference to the prevailing party's ability to recoup "full costs."[70] Here, the DTSA does not award costs at all, let alone the "full costs" mentioned in the Copyright Act.[71] In light of the Supreme Court's refusal to award non-taxable costs even where Congress made the effort to include costs in the statute's text, the Court concludes that it cannot award CSC its non-taxable costs under the DTSA.

**2. Taxable Costs**

CSC seeks an award of $212,293.67 in taxable costs.[72] Taxable costs are limited to those under Rule 54.[73] Further taxable costs are to be sought through the bill-of-costs procedure set forth in Federal Rule of Civil Procedure 54(d)(1), in the first instance before the Clerk of Court. Accordingly, the Court declines to award the requested taxable costs in this Order, but CSC may file a bill of costs with the Clerk of Court within 14 days of this Order to seek any taxable costs to which it contends it is entitled.

---

[70] 586 U.S. 334, 336 (2019).

[71] 18 U.S.C. § 1836(b)(3)(D).

[72] Doc. 592 at 24.

[73] *See* 28 U.S.C. § 1920; *see also* 28 U.S.C. § 1821 (setting forth compensable witness fees); *Rimini St., Inc.*, 586 U.S. at 340 (explaining that without an express statutory instruction to award costs other than those identified in 28 U.S.C. §§ 1821 and 1920, a court may not authorize additional expenses) (cleaned up); *Hoffman v. L & M Arts*, No. 3:10-CV-0953-D, 2015 WL 1000864, at *7 (N.D. Tex. Mar. 6, 2015) (Fitzwater, J.) (noting a district court may not award costs omitted from the statute) (cleaned up).

## III. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** CSC's motion for attorney's fees and costs. The Court **ORDERS** TCS to pay CSC $15,291,490.97 in attorney's fees and directs CSC to file a bill of costs to recover its taxable costs with the Clerk of the Court within 14 days of this Order.

**IT IS SO ORDERED** this 23rd day of September, 2026.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE